**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

BOBBY J. HARTFIELD,       )
                             )
           Petitioner,      )
                             )
v.                          )       Case No. 06-3153-WEB
                             )
DAVID R. MCKUNE,        )
Lansing Correction Facility,    )
              &           )
PAUL MORRISON,         )
Kansas Attorney General,     )
                             )
          Respondents.   )

<u>MEMORANDUM AND ORDER</u>

      Pursuant to 28 U.S.C. § 2254, petitioner Bobby Hartfield seeks relief from his Kansas state

conviction.  Petitioner argues his sentence is unconstitutional because the complaint charging him

with aggravated burglary was defective and his counsel was ineffective for failing to object to this.

<u>I.  Procedural History.</u>

      On May 30, 2000 Petitioner was charged in the District Court of Reno County, Kansas, with

one count of attempted aggravated robbery and one count of aggravated burglary.  On February 14,

2001, Petitioner was convicted by a jury of one count of aggravated burglary.  Petitioner was

sentenced to 136 months imprisonment.  Petitioner filed for collateral relief pursuant to Kan. Stat.

Ann. 60-1507 and the district court denied the motion without a hearing.  The Kansas Court of

Appeals (KCA) affirmed the district court's denial and the Kansas Supreme Court (KSC) denied

review. *Hartfield v. State*, No. 91, 557 (Kan. Ct. App. August 13, 2004) (unpublished).  Petitioner

filed a timely petition for habeas relief on June 2, 2006.  The State filed a response but Petitioner

filed no traverse.

## II.  Facts.

On the early morning hours of May 27, 2000, in Hutchinson, Kansas, Lavenia Woodson awoke to a black male choking her and asking her where her money was located.  (Tr. at 20-21). At some point, Woodson was hit.  (Tr. at 22).  Woodson remembered seeing a hammer, but was not sure what actually delivered the blow.  (Tr. at 22-23).  She was certain it was not a fist.  (Id.). Woodson told her attacker that there was money under the mattress.  (Tr. at 21).  As the attacker looked under the mattress, Woodson fled.  (Tr. at 24).  Woodson testified that she did not recognize her attacker but knew that he was black.  (Tr. at 24).  She stated that the attacker was not her son, Jim Woodson, because she could tell by his voice.  (Tr. at 26-27).  Lavenia Woodson testified she knew Bobby Hartfield because he had given her and her son a ride to Dillons to pick up money sent to Ms. Woodson from her daughter in Montana.  (Tr. at 25-26).

Andre Woodson, Lavenia Woodson's grandson, lived with Woodson at the time of the attack.  (Tr. at 43-44).  Andre Woodson stated that he awoke to cries from his grandmother.  (Tr. at 44).  Andre Woodson opened the door and saw some sort of man, but could not distinguish his face. (Tr. at 44-45).  Andre Woodson saw only one man, but stated it was not his uncle, Jim Woodson. (Tr. at 45).  Subsequently, he called the police.  (Tr. at 46).

Shelia Hartfield, Petitioner's wife, testified that her husband admitted being present inside the Woodson residence when Lavenia Woodson was hit.  (Tr. at 95).  Hartfield told police that her husband was headed toward Oklahoma.  (Tr. at 89-90).  Lieutenant John Tracy with the Hutchinson Police Department testified that Hartfield told him that her husband had messed up and had hit Jim

Woodson's mother, Lavenia Woodson, in the head with a hammer.  (Tr. at 121).

Officer Wesley Layton of the Perry, Oklahoma, Police Department testified that he observed Petitioner driving his car southbound on I-35.  (Tr. at 77).  Officer Layton executed a felony traffic stop and placed petitioner under arrest.  (Tr. at 78-79).  Officer Dave Maness and Detective Clay Rothe, of the Hutchinson Police Department, transported Petitioner from the Perry Police Department back to Hutchinson, Kansas.  (Tr. at 169).  Officer Maness testified that Petitioner was clearly in custody and under arrest at the time they picked him up.  (Tr. at 170).  Officer Maness advised petitioner of his constitutional rights under Miranda.  (Tr. at 172-173).  Petitioner stated he understood his rights but he wished to speak with the police.  (Tr. at 172-173).  Petitioner stated to Officer Maness and Detective Rothe that he and Jim Woodson had gone to Lavenia Woodson's home to get money to buy crack.  (Tr. at 184-185).  He stated that Jim Woodson hurt his mother and he admitted standing close enough that Woodson fell against him.  (Tr. at 185).

Petitioner testified at his trial.  (Tr. at 291).  Petitioner admitted going to Woodson's house with Jim Woodson.  (Tr. at 303-04).  He admitted being inside the residence but denied that he planned on taking anything.  (Tr. at 308-10).  He stated he saw a woman figure running at him and that he fell backwards into the wall as the figure passed him.  (Tr. at 309).  Petitioner was asked if he tried to strike Woodson in any way and he stated that he did not.  (Tr. at 310).  Petitioner denied trying to rob or burglarize Woodson.  (Tr. at 324-25).  Petitioner admitted he later went to Oklahoma where he was arrested.  (Tr. at 314-15).

III.  Standard of Review.

The Court's standard of review is set out in the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), which "circumscribes a federal habeas court's review of a state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed.2d 144, 154 (2003). Where a state court has adjudicated a claim on the merits, the Court may not grant a writ of habeas corpus unless the adjudication:

> (1) resulted in a decision that was contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), "the only question that matters," is "whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 155 L. Ed. 2d at 155. In other words, if § 2254(d)(1) applies, the Court need not conduct a de novo review of the state court decision. *Id.*

Clearly established Federal law means, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* Determining what the Supreme Court has clearly established is usually "straightforward." *Id.* First, a state court's decision is *contrary* to such law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed.2d 914, 926 (2002). Second, the state court's *application* of clearly established Federal law is *unreasonable* "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* The application must be unreasonable, not just incorrect. *Id.* "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed,

-4-

it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Patton v. Mullin*, 435 F.3d 788, 794 (10th Cir. 2005) (*citing Early v. Packer,* 537 U.S. 3, 8 (2002)).

Section 2254(e)(1) requires this Court to presume the state court's factual determinations are correct; furthermore, the prisoner bears the burden to rebut the presumption by clear and convincing evidence. § 2254(e)(1). The Court does not stand to correct errors of state law and is bound by a state court's interpretation of its own law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).


## IV. Defective Complaint.

Petitioner argues his conviction violates the Fifth and Sixth Amendments and the Kansas Bill of Rights. Petitioner supports this argument by claiming the Kansas complaint charging him with aggravated burglary is deficient because it omits the element of the crime requiring the presence of a human being inside the building to be burglarized. Kan. Stat. Ann. 21-3716.

First, Petitioner's claim that his conviction violated the Kansas Bill of Rights is denied as federal courts cannot correct violations of state law. See *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998) (habeas relief available to state prisoner only if state court error deprived him of fundamental rights guaranteed by the U.S. Constitution). Petitioner next claims that the defective complaint stripped Kansas of jurisdiction over his case. Some jurisdictions have held that where a charging instrument is so deficient that it fails to allege a violation of state law, it deprives the state court of jurisdiction. *Hamilton v. McCotter*, 772 F.2d 171, 184 (5th Cir. 1985); *DeBenedictus v. Wainwright,* 674 F.2d 841, 842-843 (11th Cir. 1982). However, "[w]hen it appears...that the sufficiency of an indictment was squarely presented to the highest court of the state on appeal and

that court held that the trial court had jurisdiction over the case, the issue is foreclosed to a federal court." *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969); see *Hunt v. Tucker*, 875 F. Supp. 1487, 1522 (N.D. Ala. 1995) (the question of whether the state courts had jurisdiction is one for state courts).

In this case, the KCA held, under state law, that the defective complaint did not deprive it of jurisdiction. *Hartfield*, No. 91,557 at 5. The KSC considered Petitioner's request for review and denied it without opinion. Because Petitioner's jurisdiction argument is a question of state law addressed by state courts, the Court is unable to provide relief on this basis. See *Roe v. Baker,* 316 F.3d 557, 570 (6th Cir. 2002) (beyond the Sixth Amendment notice requirement, a deficiency in a state charging instrument is not cognizable on habeas review). The only remaining issues are the alleged constitutional violations, which the Court now addresses.

The Constitution guarantees the right of an accused to be informed of the nature and cause of the accusations filed against him.[1] U.S. Const. amend VI. A defendant's Sixth Amendment right to notice of the charges against him is violated when he cannot anticipate from the charging instrument what the evidence will be at trial or when it fails to inform the him of the specific offense. *United States v. Moore,* 198 F.3d 793, 796 (10th Cir. 1999); *United States v. Staggs*, 881 F.2d 1527, 1544 (10th Cir. 1989); see *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999).

The complaint alleged the following:

[O]n or about the 27th day of may, 2000, in said County of Reno and State of Kansas, one **BOBBY JOE HARTFIELD** then and there being, did then and there unlawfully, **FELONIOUSLY**, and willfully:

---

[1] Petitioner's contentions do not implicate the Grand Jury Clause of the Fifth Amendment because that Clause does not apply to state prosecutions. See *Hunter v. State of New Mexico,* 916 F.2d 595, 598 n. 5 (10th Cir. 1990).

COUNT I                                          K.S.A. 21-3407 and K.S.A. 21-3301
ATTEMPTED AGGRAVATED ROBBERY        Severity Level 5, Person Felony
attempt to take property from the person or presence of another, to-wit: Lavenia Woodson,
by force or threat of bodily harm to Lavenia Woodson, while armed with a dangerous
weapon, to-wit: hammer, or did inflict bodily harm upon said Lavenia Woodson in the
course of such robbery but failed in the perpetration thereof after committing an overt act
in the perpetration of said Aggravated Robbery....

COUNT II                                         K.S.A. 21-3716
AGGRAVATED BURGLARY                  Severity Level 5, Person Felony
On or about the 27th day of May, 2000, in said County of Reno and State of Kansas, one
**BOBBY JOE HARTFIELD** then and there being, did then and there unlawfully,
**FELONIOUSLY**, and willfully knowingly and without authority enter or remain within a
residence, to-wit: home of Lavenia Woodson, with intent to commit a felony, to-wit:
Aggravated Robbery, therein.

(Def. Ex. A).

The Court agrees that count two is missing the element requiring a human being to be inside

the residence to be burglarized; however, the Court finds Petitioner had adequate notice of the

charge.[2]  The second count of the complaint clearly lists aggravated burglary in capital letters and

cites the statute, which contains the elements of the offense.  See *United States v. Bolton*, 68 F.3d,

396, 400 (10th Cir. 1995) (indictment which erroneously omitted a connection to interstate

commerce was not unconstitutional because it also cited to the code section which included this

language); see *United States v. Avery*, 295 F.3d 1158, 1176 (10th Cir. 2002) (reference to the statute

can be a factor when assessing the sufficiency of an indictment).  Count two also alleges that

Petitioner entered the house of Lavenia Woodson with the intent to commit aggravated robbery.  A

reading of the aggravated robbery statute shows a commission of that offense is only possible if

another human being is involved.  Kan. Stat. Ann. 21-3426, 21-3427.  Furthermore, count one

---

[2]Aggravated burglary is "knowingly and without authority entering into or remaining
within any building...*in which there is a human being*, with intent to commit a felony, theft or
sexual battery therein..."  Kan. Stat. Ann. 21-3716 (emphasis added).

alleges Petitioner committed attempted aggravated robbery when he attempted to take property from Lavenia Woodson by force.  Reading the document as a whole, Petitioner could anticipate evidence at trial showing he entered the house while Lavenia Woodson occupied that house in order to commit aggravated robbery on her.  See *United States v. Edmonson,* 962 F.2d 1535 (10th Cir. 1992) (when evaluating the sufficiency of the charging instrument, the Court may consider the entire document).  While the Court does not endorse the draftsmanship of the complaint, in this case, the notice requirements of the Sixth Amendment were met.

However, even if the state's complaint were constitutionally defective, Petitioner fails to show he merits relief.  The Tenth Circuit, in an en banc decision, decided an analogous case under the standards of the Fifth Amendment.  *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001) (en banc).  In *Prentiss,* the indictment failed to allege the Indian status of the accused and the defendant, which were essential elements of the crime of arson in Indian country.  *Id.* at 980.  The Court held that such errors, while not in conformity with the Fifth Amendment, neither deprived the court of subject matter jurisdiction nor required automatic reversal; instead, they were subject to harmless error review.  *Id.* at 984.

The Fifth Amendment's Grand Jury Clause and the Sixth Amendment's notification requirement are sufficiently related; therefore, the Court will also apply the harmless error standard.  See *United States v. Williamson*, 53 F.3d 1500, 1512 n. 4 (10th Cir. 1995) (discussing the relationship of Fifth and Sixth Amendments); *Prentiss,* 256 F.3d at 985.  Consequently, the Court must determine "[w]hether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *Id.*; see *Roberson v. Williams,* 336 F. Supp.2d 762 (N.D. Ohio 2004) (applying harmless error analysis to habeas appeal challenging sufficiency of state

charging instrument).

Petitioner claims he was prejudiced because he was found guilty. The Court disagrees. At his trial, Petitioner's defense was that he innocently followed another individual into the house without being aware that the individual planned on robbing the victim. This defense was designed to cast reasonable doubt on the element requiring intent to commit a felony while in the house. Petitioner fails to explain how the absence of words alleging the presence of Lavenia Woodson in the house to be burglarized affected his ability to mount this defense or that he would have changed his defense had the complaint included this language.

The Court also notes trial testimony from Petitioner and his wife show Lavenia Woodson was inside the house at the same time as Petitioner. Furthermore, the trial court properly instructed the jury of the elements of the offense of aggravated burglary, including the requirement that a human being be inside the house. The deficient complaint did not contribute to the verdict because Petitioner's defense was not prejudiced, the evidence at trial supported the charge, and the jury received proper instructions. See also *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986) ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt"). The Court finds the defective complaint was harmless error and Petitioner is not entitled to relief. *Bolton,* 68 F.3d at 400 (reliance on an indictment's technical defect without showing prejudice is insufficient to set aside the conviction)

The KCA came to the same conclusion using a similar analysis. Its decision was not an unreasonable application of federal law and the Court denies relief on this ground

<u>V.  Ineffective Assistance of Counsel.</u>

Petitioner next argues his counsel was ineffective for failing to object to the deficient complaint.  Using Kansas state law, the KCA denied these claims.  The KCA cited the following Kansas standard for ineffective assistance of counsel:

> Before counsel's assistance is determined to be so defective as to require reversal of a conviction, defendant must establish (1) counsel's performance was deficient, which means counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which requires showing counsel's errors were so serious they deprived defendant of a fair trial.

*Hartfield v. State,* No. 91,557 at 5-6 (*citing State v. Kirby,* 272 Kan. 1170, 1194, 39 P.3d 1 (2002)).

This law is at least as favorable as the familiar *Strickland* standard under Federal law. *Strickland v. Washington,* 466 U.S. 668 (1984).  Consequently, the Court will analyze Petitioner's claims to determine if Kansas courts unreasonably applied Federal law.

To establish a claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687-688.  To establish prejudice, Petitioner must show there was a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Id.* at 694.

Petitioner's claim fails because he cannot show prejudice.  Even if his counsel had objected to the deficient complaint, Petitioner fails to show the result of the trial would have been different. As discussed earlier, Petitioner does not allege that his strategy at trial would have changed or that his defense strategy was hampered by the deficient complaint.  Furthermore, the jury was properly instructed and the evidence at trial met the elements of the aggravated burglary offense.  The KCA also found Petitioner suffered no prejudice.  Its decision was not an unreasonable application of

federal law and the Court cannot grant Petitioner relief on this basis.

Petitioner's motion for relief under 28 U.S.C. § 2254 (Doc. 1) and Certificate of Appealability under 28 U.S.C. § 2253 are hereby DENIED.  The Clerk is directed to enter judgment for Respondents.

SO ORDERED this 11th  day of January, 2007.

 s/ Wesley E. Brown
Wesley E. Brown, Senior U.S. District Judge